IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NAPOLEON L. JACKSON,<br><br>    Defendant. | Case No. 3:15-cv-410-DJH |

**ORDER AND JUDGMENT OF PERMANENT INJUNCTION**

Having considered the United States' motion for default judgment, any opposition thereto, and the entire record of this proceeding and for good cause shown, the Court makes the following findings of fact and conclusions of law and enters this permanent injunction, pursuant to Federal Rule of Civil Procedure 65.

**FINDINGS OF FACT**

1. Defendant Napoleon Jackson ("Jackson") resides in Louisville, Kentucky, within the jurisdiction of this Court.

2. Jackson is an income tax preparer within the meaning of § 7701(a)(36). He prepares other people's tax returns for compensation, charging fees of $100 or more to prepare individual income tax returns.

3. Jackson is the owner of NJ Mobile Tax Service, LLC ("NJ Mobile").

4. Jackson began preparing tax returns for compensation in 2009. In 2010, Jackson operated his tax return preparation business under the name of Advantage Tax and Business Service.

1

5. In a flyer for NJ Mobile, Jackson offers to travel to his customers' homes and prepare their tax returns. The flyer invites potential customers to "Let me do the numbers & I'll even come to you," and boasts that "[Jackson] can increase your chances for a higher return."

6. The flyer described above also lists the website www.njmobiletax.com for NJ Mobile.

## IRS Investigation of Jackson

7. The Internal Revenue Service ("IRS") estimates that Jackson prepared and filed 162 federal income tax returns for tax years 2010 and 2011.

8. For tax year 2011, Jackson prepared and filed at least 41 returns that claimed education tax credits on behalf of his customers. The IRS sampled 17 returns prepared and filed by Jackson in 2011 that included education tax credits. Of these 17 returns, 14 of the underlying taxpayers did not have a Form 1098-T – the tax form that reflects payments and amounts billed of qualified tuition and related expenses for taxpayers for each calendar year – on file for themselves or their dependents, and an additional taxpayer had a Form 1098-T that showed a lower amount than the amount reported on the return by Jackson.

9. For tax year 2011, Jackson prepared and filed at least 68 returns that claimed the mortgage interest deduction on behalf of his customers. The IRS examined 18 returns that were prepared and filed by Jackson in 2011 that claimed a deduction for mortgage interest. Four of those returns claimed deductions in amounts different than the amounts listed on the Form 1098-INT filed with the IRS. Thirteen of the returns had no Form 1098-INT on file with the IRS that would corroborate the taxpayers' entitlement to the mortgage interest deductions claimed by Jackson on behalf of his customers.

10. Based on the IRS's examinations of the returns of 20 customers of Jackson for a total of 35 tax years, the IRS made additional tax assessments that totaled $153,240 and additional penalty assessments of $21,529 against Jackson's customers.

**Jackson Prepared and Filed Returns That Claimed Fraudulent Mortgage Interest Deductions**

11. Jackson prepared and filed tax returns that inflated his customers' deductions for mortgage interest paid under § 163. This resulted in returns which understated the tax liabilities of Jackson's customers and which inflated their tax refunds.

12. In one instance, Jackson prepared and filed a tax return claiming a mortgage interest deduction for a taxpayer that rented a home, did not claim to own a home, and did not provide Jackson with a Form 1098-INT, an informational tax form that evidences the payment of mortgage interest. Jackson prepared and filed the return in question from the customer's rental home.

13. In another case, Jackson prepared and filed a tax return that claimed the taxpayer was entitled to a mortgage interest deduction of $7,908, despite the fact the customer did not provide Jackson with a Form 1098-INT and did not tell Jackson he owned any real property. In that instance, Jackson visited the customer at his rented home to pick up his Form W-2.

**Jackson Prepared and Filed Returns That Claimed Fraudulent Real Estate Tax Deductions**

14. Jackson prepared and filed tax returns that fraudulently increased his customers' deductions for real estate taxes paid under § 164, which resulted in the understatement of his customers' tax liabilities and claims for inflated tax refunds.

15. In one case, a customer selected Jackson as a tax preparer in part because the customer did not own property. Jackson prepared and filed a tax return for this customer that included a real estate tax deduction of $1,582, despite the fact the customer did not own property

and provided no evidence that he had paid any real estate taxes.  The IRS disallowed the deduction in full.

16. In another situation, Jackson prepared and filed a tax return from the rental home of a customer that claimed a real estate tax deduction of $1,326, despite the fact the customer did not own a home and the customer made no suggestion to Jackson that the customer paid real estate taxes during the year in question.  The IRS later disallowed the deduction in full.

**Jackson Prepared and Filed Returns That Claimed Fraudulent Dependents on Behalf of His Customers**

17. Jackson repeatedly and continually made fraudulent claims on behalf of his customers for dependents that were not, in fact, dependents of those customers, which resulted in understatements of tax liabilities and claims for inflated tax refunds.

18. Jackson prepared and filed a tax return for one customer that listed three dependents despite the fact the taxpayer "did not give the preparer any dependents to claim" and had no children.  The three dependents listed by Jackson on this return were all relatives of Jackson, not the taxpayer, including Jackson's ten-year old daughter.

19. Jackson prepared and filed a tax return for another customer that claimed personal exemptions for two dependent children of the sister of the taxpayer that did not live with him at any point during the tax year.  Jackson told the customer that the customer could claim these children as dependents despite his knowledge that they did not meet the requirements of § 152(c)(1) to qualify as a dependent of that taxpayer.

**Jackson Prepared and Filed Returns That Claimed Identical Business Deductions for the Same Customers**

20. Jackson repeatedly and continually prepared and filed tax returns that claimed identical amounts of business deductions for the same customers for successive tax years, which resulted in understatements of tax liabilities and claims for inflated refunds.

21. For one customer, Jackson prepared and filed tax returns for two consecutive years that claimed the same amounts of business expenses on Schedule C for the following ten items: advertising expenses, contract labor expenses, depreciation, legal and professional expenses, office expenses, repairs, supplies, travel expenses, meals and entertainment expenses, and utilities. The IRS ultimately disallowed all of these expenses for both years, and the understated expenses resulted in a loss of tax revenue for the United States of $4,382.

22. For a second customer, Jackson prepared and filed two tax returns for two consecutive years that claimed the same amounts of business expenses on Schedule C for the following nine items: legal and professional expenses, repairs, travel expenses, meals and entertainment expenses, utilities, automobile expenses, insurance expenses, other/miscellaneous expenses, and business home use expenses. The IRS ultimately disallowed all of these expenses for both years, and the understated expenses resulted in a loss of tax revenue for the United States of $5,735.

23. For a third customer, Jackson prepared and filed two tax returns for two consecutive years that claimed the same amount of business expenses on Schedule C for the following eleven items: cost of goods sold, depreciation, office expenses, repairs, travel expenses, meals and entertainment expenses, utilities, automobile expenses, insurance expenses, other/miscellaneous expenses, and business use home expenses. Jackson also failed to report Schedule C income for this customer that the customer informed Jackson of during their meeting.

### Jackson Prepared and Filed Returns That Claimed Fraudulent Charitable Contribution Deductions

24. Jackson repeatedly and continually fraudulently claimed charitable contribution deductions on behalf of his customers to reduce his customers' tax liabilities or generate inflated refunds for them.

25. After a set of customers contacted Jackson to inform him that the IRS initiated an audit against them, Jackson offered to provide them with a falsified letter from a church to indicate the customers made $5,500 in cash charitable contributions during the taxable year. The IRS ultimately disallowed $6,000 in charitable contribution deductions for these taxpayers.

26. Jackson prepared and filed a tax return for a second customer that claimed $1,650 in cash contributions, despite the fact he never spoke to the customer about charitable contributions and that the customer, in fact, made no charitable contributions during the tax year for which Jackson prepared and filed the return.

### Jackson Prepared and Filed Returns That Claimed Fraudulent American Opportunity Tax Credits

27. Jackson repeatedly and continually fraudulently claimed the American Opportunity Tax Credit on behalf of his customers to reduce his customers' tax liabilities or generate erroneous refunds for his customers.

28. Jackson prepared and filed a tax return that claimed the American Opportunity Tax Credit for one customer without that customer's knowledge, and despite the fact that the customer provided Jackson no information that indicated the customer attended college during the tax year in question.

29. Jackson prepared and filed a tax return for a second customer that also claimed the American Opportunity Tax Credit, despite the fact the customer did not provide him a Form

1098-T, and did not suggest to Jackson that the customer went to college or was otherwise eligible for the credit for the tax year in issue.

30. Of 22 tax returns sampled by the IRS that were prepared and filed by Jackson on behalf of his customers, 21 claimed American Opportunity Tax Credits that were ultimately disallowed, resulting in $39,462.20 of disallowed tax credits and an error rate of 95 percent.

### Jackson Failed to Provide Customers Copies of Their Tax Returns

31. Jackson repeatedly and continually prepared and filed tax returns on behalf of his customers without providing those customers with a copy of the tax return.

32. Jackson prepared and filed a tax return on behalf of one of his customers for the 2011 tax year and failed to provide a copy of the return until significantly after the time the return was filed, when the customer advised Jackson that the customer intended to apply for financial aid to continue the customer's education.

33. Jackson prepared and filed the tax return for one customer for the 2011 tax year, and failed to provide her with a copy of the return at the time of filing. Jackson also evaded follow-up phone calls from the customer that requested a copy of the tax return.

### Jackson Diverted Customers' Refunds to Himself and Threatened Customers That Failed to Cooperate With His Scheme

34. Jackson repeatedly and continually diverted the tax refunds of his customers to himself and at times threatened customers that failed or refused to participate in this portion of his scheme.

35. In one case, Jackson used a service known as Santa Barbara Tax Products Group to divert a customer's refund to his personal account. The customer later received only $4,599 of the $9,308 shown on his tax return that Jackson prepared and filed on the customer's behalf.

36. In a second case, Jackson told a set of customers for whom he prepared and filed a tax return that he would charge a fee of $150 for preparing and filing the customers' federal and state income tax returns. Jackson listed his own bank account number on the tax return and then wired the refund to the customers, less $400 that he retained for himself for preparing and filing the tax return on behalf of the customers, a $250 increase in his previously stated fee.

37. In a case where Jackson failed to provide for his fee to be taken from the return of the customer, he began threatening and harassing the customer. His harassing actions included posting on the customer's Facebook page, text messaging, voicemails laced with vulgarities, threatening to disrupt the customer's federal student aid, and making a choking motion in the direction of the customer while mouthing the words "b****, you got my money."

### Harm to the United States of America

38. Jackson has caused substantial revenue losses to the United States of America.

39. The Service audited 31 tax returns prepared by Jackson on behalf of 20 customers for tax years 2010 and 2011. An examination of these 31 returns by the IRS resulted in an increase in taxes owed in each and every instance, an error rate of 100 percent.

40. Jackson prepared at least 162 returns for tax years 2010 to 2011, and continues to prepare returns today.

41. The total projected harm to the United States of America from loss of revenue due to Jackson's misconduct in approximately 162 returns prepared for tax years 2010 and 2011 is estimated to be in excess of $808,931.

42. In addition to this known and estimated tax loss, the government has used its resources and agents and others to audit returns prepared by Jackson.

# CONCLUSIONS OF LAW

1. Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7407, 7408, and 7402(a).

2. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1396 because Defendant Napoleon Jackson, doing business as NJ Mobile Tax Service, LLC, resides in Louisville, Kentucky, within this judicial district.

3. Under 26 U.S.C. § 7407, Congress has authorized the United States to seek an injunction against a tax return preparer who, among other things, has engaged in any conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695.

4. If a return preparer's conduct is continual or repeated and the court finds that a narrower injunction (i.e., prohibiting specific enumerated conduct) would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may enjoin the person from acting as a return preparer.

5. Section 6694(a) of the Internal Revenue Code penalizes a tax return preparer who prepares a tax return understating the taxpayer's liability due to an unreasonable position (one for which there is no substantial authority), and the preparer knew or should have known of the position.

6. Jackson has prepared numerous federal income tax returns which willfully understated his customers' federal income tax liabilities and claimed inflated tax refunds through a variety of schemes, in violation of 26 U.S.C. §§ 6694(a) and (b).

7. In addition, Jackson failed to provide his customers copies of the returns that he prepared and filed for them, in violation of 26 U.S.C. § 6107(a). Since many or all of his customers were not supplied with copies of their returns that Jackson prepared for them, many of

his customers had no information regarding the items claimed on the returns or the exact amount of the tax refunds claimed on their behalf.

8. Jackson diverted portions of his customers' tax refunds to himself, in violation of 26 U.S.C. § 6695(f).

9. Absent an injunction, Jackson is likely to continue preparing federal tax returns for customers, enabling them to receive greater refunds than they are legitimately entitled to receive; therefore, an injunction is necessary to prevent Jackson's continued misconduct. Penalties and administrative measures have been and continue to be insufficient to deter his conduct.

10. Jackson should be enjoined under 26 U.S.C. § 7407 from acting as a tax return preparer and/or assisting in the preparation of federal tax returns because a more limited injunction would be insufficient to prevent his interference with the proper administration of the internal revenue laws and recurrence of conduct subject to penalty under 26 U.S.C. § 6694.

11. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

12. Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability.

13. Jackson prepared tax returns falsely claiming deductions for Schedule A expenses for mortgage interest, real estate taxes, and charitable contributions; false education credits; false dependents; and fabricated Schedule C business losses.

14. If the Court does not enjoin Jackson, he is likely to continue to engage in conduct prohibited by 26 U.S.C. § 6701. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

15. Section 7402(a) of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

16. Jackson, through the actions described above, has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

17. Unless enjoined, Jackson is likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws.

18. The United States has showed that it is likely to succeed on the merits of its claim. The United States has also showed that there is also a significant possibility of irreparable harm to the United States and to Jackson's customers without an injunction.

19. Injunctive relief under 26 U.S.C. § 7402(a) is warranted.

# PERMANENT INJUNCTION

Based on the foregoing findings of fact and conclusions of law, the Court enters the following permanent injunction under Federal Rule of Civil Procedure 65 and 26 U.S.C. §§ 7402, 7407, and 7408 against Napoleon Jackson, his business(es), including but not limited to NJ Mobile Tax Service, LLC, and Advantage Tax and Business Service, and anyone in active concert with them.

NOW, THEREFORE, it is accordingly ORDERED, ADJUDGED, AND DECREED that:

1. The Court has jurisdiction over this action under 28 U.S.C. §§ 1340 AND 1345, and under 26 U.S.C. §§ 7402, 7407, and 7408.

2. Napoleon Jackson ("Jackson") and his representatives, agents, employees, attorneys, independent contractors, and any and all persons in active concert or participation with them who receive actual notice of this Order and Judgment for Permanent Injunction, are permanently enjoined under 26 U.S.C. §§ 7402 and 7408 from:

   A. Engaging in any conduct that interferes with the proper administration and enforcement of the internal revenue laws;

   B. Engaging in activity subject to penalty under 26 U.S.C. § 6701, including preparing or assisting in the preparation of a federal tax return, amended return, refund claim, or any other document relating to a matter material under the internal revenue laws that includes a position that Jackson knows will, if used, result in the understatement of another person's federal tax liability;

   C. Engaging in any other conduct subject to penalty under the Internal Revenue Code; and

  D. Misrepresenting any of the terms of this Order and Judgment of Permanent Injunction.

3. Jackson is permanently enjoined under 26 U.S.C. §§ 7402 and 7407 from:

  A. Acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person other than himself;

  B. Advising, assisting, counseling, or instructing anyone about the preparation of a federal income tax return or other related documents or forms;

  C. Representing, or appearing on behalf of, any person before the Internal Revenue Service;

  D. Engaging in any activity subject to penalty under 26 U.S.C. § 6694, including, but not limited to, preparing tax returns that claim fraudulent Schedule A expenses for mortgage interest, real estate taxes, and charitable contributions; false education credits; false dependents; and fabricated Schedule C business losses;.

  E. Engaging in any conduct subject to penalty under 26 U.S.C. § 6695, including, but not limited to, diverting portions of his customers' tax refunds to himself; and failing to furnish copies of the returns that he prepared to his clients;

4. Jackson shall contact, within 30 days after the entry of this Order and Judgment of Permanent Injunction, by United States mail and, if an email address is known, by email, all persons, to the extent that the identities and locations of such persons is within the possession,

custody, or control of Jackson, for whom he prepared, or assisted in preparing, federal tax returns to inform them of the permanent injunction entered against him.

5. Jackson shall provide to counsel for the United States, within 30 days after the entry of this Order and Judgment of Permanent Injunction, a complete list of the persons, to the extent such a list is within the possession, custody, or control of Jackson, for whom Jackson has prepared or assisted in preparing any federal income tax return, amended return, or refund claim at any time from January 1, 2010 through the present, with such list to include for each person the name, address, phone number, email address, social security number, employer identification number, or individual tax identification number, and the tax period(s) to which or for which each such return, amended return, or refund claim relates.

6. Jackson shall file with the Clerk of this Court, within 60 days after the entry of this Order and Judgment of Permanent Injunction, a sworn certificate of compliance, signed under penalty of perjury, stating that he has complied with the foregoing directive.

7. The United States may engage in post-judgment discovery to ensure compliance with this Order and Judgment of Permanent Injunction.

8. This Court shall retain jurisdiction over this civil action to enforce his compliance with the terms of this Order and Judgment of Permanent Injunction.

9. The United States may provide actual notice of this permanent injunction entered in this action by mailing a true and correct copy thereof to the defendant, Napoleon Jackson, by registered or certified mail, return receipt request, and by filing a certificate of service that certified the United States' compliance with this provision.

December 22, 2015

**David J. Hale, Judge**
**United States District Court**